UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENEE HOLLAND,

               Plaintiff,                       Case No. 2:21-cv-10364

                                            District Judge Victoria A. Roberts

v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 10), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 11) and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 10), **GRANT** Defendant's motion for summary judgment

(ECF No. 11), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff Renee Holland brings this action under 42 U.S.C. § 405(g) and 42

U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of Social

Security (Commissioner) denying her application for Disability Insurance (DI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 10), the

Commissioner's cross-motion for summary judgment (ECF No. 11), Plaintiff's

reply (ECF No. 12), and the administrative record (ECF No. 8).

### A.   Background and Administrative History

In her May 31, 2019 application for disability insurance benefits (DIB),

Plaintiff alleges her disability began on April 10, 2019, at the age of 50.  (ECF No.

8, PageID.175.)  In her disability report, she lists avascular necrosis (first MTP

joint of l[ef]t foot), hallux rigidus, arthritis lumbar spine and l[ef]t foot, multilevel

lumbar spine disc "buldges" [sic], annular disc tear at L5-S1 of lumbar spine, and

"thyro[i]ditis" as limiting her ability to work.  (ECF No. 8, PageID.196.)  Her

application was initially denied on September 16, 2019.  (ECF No. 8, PageID.109-

110.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (ECF

No. 8, PageID.123-126.)  On June 3, 2020, ALJ Virginia Herring held a hearing at

which Plaintiff and a vocational expert (VE), Scott Silver, testified.  (ECF No. 8,

PageID.70-98.)  On June 23, 2020, ALJ Herring issued an opinion, which

determined that Plaintiff was not disabled within the meaning of the Social

Security Act.  (ECF No. 8, PageID.54-69.)

Plaintiff submitted a request for review of the hearing decision/order.  (ECF

No. 8, PageID.171-174.)  However, on December 31, 2020, the Appeals Council

denied Plaintiff's request for review.  (ECF No. 8, PageID.34-40.)  Thus, ALJ

Herring's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on February 19, 2021.  (ECF

No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 772 pages of medical

records, which were available to the ALJ at the time of her June 23, 2020 decision.

(ECF No. 8, PageID.253-1025 [Exhibits B1F-B9F].)  These materials will be

discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since April 10, 2019, the alleged onset date.  (ECF No.

8, PageID.59.)  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments: avascular necrosis of the first metatarsophalangeal joint of the left

foot, Hallux rigidness, arthritis at the lumbar spine with disc bulges and an annular

tear at L5-S1, thyroiditis, and a history of three inguinal hernia repairs.  (ECF No.

8, PageID.59-60.)  At **Step 3**, the ALJ found Plaintiff did not have an impairment

or combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (ECF No. 8, PageID.60.)  **Between Steps 3 and 4** of the

sequential process, the ALJ evaluated Plaintiff's residual functional capacity

(RFC) and determined that Plaintiff had the RFC to perform light work except:

- Can sit six hours [in] an eight hour workday;
- Can stand and/or walk four hours in an eight hour workday[;]
- Requires the ability to change positions between sitting and standing every 15 minutes;
- Can occasionally climb stairs or ramps, but never climb ladders, ropes, or scaffolds;
- Can occasionally balance, stoop, kneel, crouch, or crawl; and
- Must avoid dangerous machinery and unprotected heights.

(ECF No. 8, PageID.60-64.)  At **Step 4**, the ALJ determined that Plaintiff could

perform past relevant work as a marketing director, as it is generally performed,

but not as she had performed the job.  (ECF No. 8, PageID.64.)  At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined that there were jobs that existed in significant numbers in the national

economy that Plaintiff could perform, such as assembler-small products, collator,

and router.  (ECF No. 8, PageID.64-65.)  The ALJ therefore concluded that

Plaintiff had not been under a disability, as defined in the Social Security Act,

since April 10, 2019.  (ECF No. 8, PageID.65-66.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff argues that the ALJ's decision is marred by legal error and unsupported by substantial evidence because: (1) the RFC assessment does not include the entirety of her limitations; (2) the ALJ failed to find ilioinguinal neuralgia to be a severe impairment at Step 2; and (3) the ALJ improperly analyzed medical opinions.  (ECF No. 10, PageID.1029, 1037-1048.)  The Commissioner opposes Plaintiff's motion, arguing that the Court should find no error on the bases asserted and that substantial evidence supported the ALJ's finding.  (ECF No. 11, PageID.1057-1075.)  In her reply brief, Plaintiff reiterates her arguments.  (ECF No. 12, PageID.1078-1084.)  I will address each argument in turn.

### 1.    The Court should find no error in the ALJ's consideration of Plaintiff's impairments and limitations

Plaintiff argues that the RFC assessment fails to include the entirety of her limitations otherwise supported by the record.  Specifically, she asserts that the

RFC should have included additional restrictions related to her ability to sit, stand, and walk, need to elevate her leg and to be off task due to chronic fatigue, and absences for injections. (ECF No. 10, PageID.1038-1044; ECF No. 12, PageID.1078-1081.) For the reasons that follow, I disagree.

### a.    RFC determination

The Plaintiff bears the burden of proof at Steps 1-4, including proving her RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity."). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and

must be supported by substantial evidence.  20 C.F.R. § 404.1527(d)(2).  Pursuant

to Social Security Ruling (SSR) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations).  In
> assessing RFC, the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting on a
> regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or
> an equivalent work schedule), and describe the maximum amount of
> each work-related activity the individual can perform based on the
> evidence available in the case record.  The adjudicator must also
> explain how any material inconsistencies or ambiguities in the
> evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7.  "The ALJ need not decide or discuss

uncontested issues, 'the ALJ need only articulate how the evidence in the record

supports the RFC determination, discuss the claimant's ability to perform sustained

work-related activities, and explain the resolution of any inconsistencies in the

record.'"  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002)

(citation omitted).

### b.    Sitting, standing, walking, and foot elevation

As part of her RFC assessment, the ALJ restricted Plaintiff to sitting for six

hours and standing/walking for four hours in an eight-hour workday, and included

a sit/stand option every fifteen minutes.  (ECF No. 8, PageID.60.)

Plaintiff asserts first that the record supports the inclusion of more restrictive

limitations related to sitting, standing, and walking, and an option to keep her foot

elevated for 50% of the workday.  (ECF No. 10, PageID.1040-1043; ECF No. 12, PageID.1078-1081.)  In so doing, she cites to medical records which she claims demonstrate that she suffers from "chronic back, abdominal, pelvic, groin, and foot pain coupled with lower extremity heaviness, weakness, and swelling," that her pain worsens with movement, and that at most visits, she is observed to have an antalgic gait, tenderness in her abdomen and feet, and limited extension of the lumbar spine.  (ECF No. 10, PageID.1041-1042 (citing ECF No. 8, PageID.41-42, 451-452, 459, 464, 472-473, 578, 853, 969-970, 974-975, 979-980, 984-985, 989-900, 999, 1003, 1007-1009).)

However, a review of these records reveals that many simply note Plaintiff's subjective statements regarding her pain and symptoms (*see* ECF No. 8, PageID.41-42, 451, 459, 472, 578, 853, 969, 974, 979, 984, 989, 999, 1003, 1007-1008), which an ALJ is not required to blindly accept, *see Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992).  Further, the ALJ acknowledged and addressed the above symptoms and impairments as part of her RFC assessment in accordance with the standards laid out above, and concluded that:

> the claimant's medically determinable impairments could reasonably
> be expected to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and limiting effects of
> these symptoms are not entirely consistent with the medical and other
> evidence in the record . . . .

*   *   *

Based on the entire record, including the testimony of the claimant, the undersigned concludes that the evidence fails to support the claimant's assertions of total disability. Despite the evidence demonstrating that the claimant has suffered from medically determinable "severe" impairments, the evidence also establishes that the claimant retains the capacity to function adequately to perform many basic activities associated with work. The residual functional capacity outlined above accounts for the claimant's testimony which is consistent with and supported by medical evidence of record, regarding vocational limitations that her condition would place on her. The claimant has testified as being generally proficient in performing her activities of daily living, with some limitations, such as taking breaking [sic] and having her husband do the grocery shopping (Hearing). Further, the disabling opinion from her pain specialist is not supported by the medical evidence of record or her own testimony (B9F, pp 2-5). Although the claimant suffers some limitation due to her impairments, and as a result, her capacity to perform work is affected, the undersigned finds that the claimant retains the residual functional capacity to perform the exertional demands of work at the light exertional level with the additional limitations noted above.

(ECF No. 8, PageID.61, 63-64.)

For example, the ALJ reviewed the treatment notes from May 2019 documenting Plaintiff's pelvic pain, left foot pain, chronic back pain, and recurrent repaired hernia (ECF No. 8, PageID.61-62 (citing Exhibits B4F-B5F)), Plaintiff's testimony regarding pain and the need to elevate her legs to reduce swelling (ECF No. 8, PageID.61), and notes from a March 2020 follow-up appointment at Neuro Pain Consultants, P.C., at which Plaintiff related back pain and extremity swelling, and displayed an antalgic gait, tenderness to palpation, and tenderness in her left foot during the physical examination (ECF No. 8, PageID.62 (citing Exhibit B9F)).

But she found that injections sometimes, although not always, relieved Plaintiff's pain, that at the March 2020 visit to Neuro Pain Consultants she displayed normal posture and range of motion of her cervical and lumbar spine and confirmed improvement of daily function with pain medication, and that she testified to being generally able to perform activities of daily living.  (ECF No. 8, PageID.61-64.)  A review of the records cited by the ALJ in support of these findings confirms the accuracy of the ALJ's summaries.  The Court cannot now re-weigh this evidence. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (it is not within the province of the Court to "reconsider facts, re-weight the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ").

Plaintiff asserts, in her reply brief, that the injections referenced by the ALJ to discount her subjective statements regarding pain provided, at most, temporary relief (ECF No. 12, PageID.1079-1080), but the ALJ explicitly acknowledged this fact.  For example, when discussing the nerve block Plaintiff received around May 2019, she stated, "For about 10 hours after the nerve block, the claimant reported a 95 percent improvement; however, since then, the reportedly severe pain had reoccurred."  (ECF No. 8, PageID.61) (internal citation omitted).  And in summarizing Plaintiff's testimony, the ALJ stated: "Morphine injections sometimes help with her pain and sometimes they do not.  The last morphine

11

injection she received was in May, but it did not help as much as past injections had (Hearing)."  (ECF No. 8, PageID.61.)

Plaintiff also argues that the ALJ should have included a leg elevation limitation in the RFC assessment, citing to her own testimony and the opinion of Dr. Alexander Tsinberg (ECF No. 10, PageID.1042-1043 (citing ECF No. 8, PageID.84, 965)), but the ALJ explicitly considered Plaintiff's testimony about leg elevation in her RFC (ECF No. 8, PageID.61) but chose not to include such a limitation, and properly discounted Dr. Tsinberg's opinion, as will be discussed in greater detail below.

Moreover, the ALJ credited evidence of Plaintiff's pain, tenderness, and weakness, and incorporated the associated limitations supported by the record, stating:

> The residual functional capacity assessment accommodates the claimant's severe impairments.  The claimant's severe physical impairments cause symptoms that include chronic left foot pain that causes an antalgic gait; and chronic back pain with associated pain when reaching overhead as well as limited lumbar extension and flexion due to pain (B4F, p 3; B9F, pp 6, 8, 9; Hearing).  Accordingly, the claimant is limited to light exertion, with sitting for six hours and standing/walking for four hours during an eight-hour workday, with occasional postural activities, but no climbing ladders, ropes, or scaffolds.  Further, the claimant testified that she experiences pressure and pain in her back when sitting or standing for extended periods and require her to constantly change positions for relief, which warrants giving her a sit/stand option every 15 minutes (Hearing).  Finally, due to safety concerns related to the claimant's inability to move quickly due to low back and left foot pain, she needs to avoid dangerous machinery and unprotected heights (B9F, p 8; Hearing).

(ECF No. 8, PageID.63.)

### c.    Fatigue

The above reasoning also applies to Plaintiff's argument that the ALJ "erred when her RFC assessment gave no limitations for Plaintiff's chronic fatigue which would cause her to be off-task or require additional breaks."  (ECF No. 10, PageID.1043.)  In support, she cites to medical records where fatigue is noted, her own testimony that she has to lay down throughout the day, and the Function Report she completed.  (ECF No. 10, PageID.1043 (citing ECF No. 8, PageID.87, 212, 459, 472, 758, 772, 963, 974, 979, 984, 989, 999, 1003).)  But the majority of the medical record she cites simply recount her own reports of fatigue (*see, e.g.*, ECF No. 8, PageID.472, 758, 974, 979), as does her testimony and self-completed Function Report, and the ALJ acknowledged her reports of fatigue (*see* ECF No. 8, pageID.62), but included no explicitly related limitations in the RFC.  *Reynolds*, 424 F. App'x at 414 (not within the province of the Court to re-weigh evidence); *Cohen*, 964 F.2d at 529 (ALJ not required to blindly accept subjective statements).

Nor does Plaintiff cite to a specific page in the record linking her fatigue with an associated functional limitation, as is her burden.  *Jordan*, 548 F.3d at 423. She does cite to the page of Dr. Tsinberg's opinion noting her fatigue (ECF No. 10, PageID.1043 (citing ECF No. 8, PageID.963)), but I see no associated limitation on that page.  And on the next page, Dr. Tsinberg checked a box indicating

Plaintiff would be off-task 25% of the time or more in a typical workday, but the ALJ properly discounted Dr. Tsinberg's opinion, as will be discussed in greater detail below.

### d.    Injections

Plaintiff also argues that if she continues receiving injections for pain at her current pace, her resulting absences would be work preclusive.  (ECF No. 10, PageID.1041; ECF No. 12, PageID.1080-1081.)  In support, however, she states only that she would be unable to work the entire day of an injection (ECF No. 10, PageID.1041), and that "most specialty offices are only open for specific times and usually not before or after normal work schedules" (ECF No. 12, PageID.1080), with no citation to the record in support.  And on the basis of these statements, she speculates that if she "were to miss one day per month in order to have injections, this would give her no time available if she needed to miss work due to symptoms of her severe pain and related symptoms that return only 10 hours after her injection; the VE testified that a person may miss only one day per month, and anything more than that would be work preclusive."  (ECF No. 12, PageID.1081.) With no support from the record, however, these statements are mere conjecture and do not discredit the ALJ's RFC assessment or disability determination.[1]

---

[1] I note that in Dr. Tsinberg's Medical Source Statement, he indicates that Plaintiff would be absent about four days per month as a result of impairments or treatment,

## 2. The Court should find no harmful error at Step 2

Plaintiff next argues that the ALJ erred at Step 2 by not including ilioinguinal neuralgia as a severe impairment. (ECF No. 10, PageID.1044-1046; ECF No. 12, PageID.1081-1084.) Specifically, she asserts that the condition causes her severe abdominal, pelvic, and groin pain, which is noted throughout the record, and states:

> During her reasoning of the RFC, the ALJ only mentions Plaintiff's back and foot pain and did not include her abdominal, pelvic, and groin pain in her analysis at Step Two of the sequential evaluation process nor the resultant limitations that should be accounted for in the RFC and in her decision, regardless of the outcome reached.

(ECF No. 10, PageID.1045; ECF No. 12, PageID.1082 n.1.)

### a. Step 2 standard

Step 2 requires an ALJ to determine if a claimant suffers from any severe impairments. 20 C.F.R. § 404.1520(a)(4)(ii), (c). Plaintiff bears the burden at Step 2 of establishing that she suffers from a severe impairment. *See Walters*, 127 F.3d at 529. An impairment is considered severe if it "significantly limits your physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a *slight*

---

but does not seem to specify any relation to receiving injections. (ECF No. 8, PageID.966.)

*abnormality* or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . . . " SSR 85-28, 1985 WL 56856, at *3 (emphasis added).

"In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). In other words, the Step 2 severity analysis is only a threshold determination. Sixth Circuit precedent readily establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation. *See, e.g., Fink v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007); *Anthony*, 266 F. App'x at 457. In other words, "any alleged omission from the list of severe impairments does not undermine the ALJ's decision" so long as the ALJ considers Plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F.Supp.2d 792, 822-23 (E.D. Mich. 2013) (quotation marks and citation omitted). Accordingly, "[t]he fact that some of [the plaintiff's] impairments were not deemed to be severe at step two [may be] legally irrelevant." *Anthony*, 266 F. App'x at 457.

**b.      Analysis**

The Court should decline to find any harmful error at Step 2 on the basis of

Defendant's arguments.  In her disability report, Plaintiff did not list ilioinguinal

neuralgia as a condition limiting her ability to work.  Nevertheless, the ALJ noted

Plaintiff's history of three ilioinguinal hernia repairs among her severe

impairments (ECF No. 8, PageID.59-60), and explicitly discussed evidence related

to ilioinguinal neuralgia throughout the RFC analysis.  The ALJ stated, for

example:

> Treatment records dating back to May 2019 indicate that the claimant
> presented to discuss potential nerve excision (B4F, p 1).  The week
> before, the claimant had undergone a nerve block for lower quadrant
> and right-sided pelvic pain that had been ongoing for about five weeks
> (Id.).  For about 10 hours after the nerve block, the claimant reported a
> 95 percent improvement; however, since then, the reportedly severe
> pain had reoccurred (Id.).  A dynamic ultrasound and CT scan had
> been performed but failed to identify the etiology of the pain (Id.).  By
> way of history, the claimant was noted with significant left foot pain,
> chronic back pain, and repairs of a recurrent right inguinal hernia and
> a Spigelian hernia about four years ago, but there is no recurrent
> hernia now (B4F, pp 1, 3).  Other than her complaints of pain, the
> claimant was recorded as doing fairly well (Id.).  Additional treatment
> notes state that the claimant's pain was likely related to ilioinguinal
> nerve neuralgia and an ilioinguinal steroid block was recommended
> (Id., p 2).  She then received an ilioinguinal nerve block in mid-May
> 2019 (B5F, p 58).

> \* \* \*

> In March 2020, the claimant followed up with medication
> management at Neuro Pain Consultants, P.C. for her moderate low
> back pain (B9F, p 6).

\* \* \*

> At that time, the claimant confirmed that her daily functioning are improving with pain medication and denied experiencing any medication side effects (Id., p 10)..  Her diagnoses included lumbar radiculopathy, lumbar spondylosis, degeneration of the lumbosacral and lumbar intervertebral discs, annular tear of the lumbar disc, ilioinguinal nerve neuralgia, and aseptic necrosis of the left foot bone (Id., pp 9-10).

(ECF No. 8, PageID.61-62.)  Accordingly, even if the ALJ erred at Step 2, which the Court need not find, any error is harmless because the ALJ found other impairments severe and continued with the sequential evaluation, considering Plaintiff's ilioinguinal neuropathy throughout.

Moreover, Plaintiff again fails to meet her burden of establishing entitlement to a more restrictive RFC on the basis of symptoms related to ilioinguinal neuropathy, only speculating that "[t]hese additional symptoms, which are not mentioned in her reasoning for the RFC, would limit her RFC further as they would also further limit her ability to sit, stand, and walk due to the pain as well as cause her to be off task due to the pain" (ECF No. 10, PageID.1045), with no citation to evidence in the record linking this condition to any concrete limitation(s).  *Jordan*, 548 F.3d at 423.

**3.    Lastly, the Court should find that Plaintiff has demonstrated no error in the ALJ's analysis of medical opinions**

Plaintiff lastly argues that the ALJ improperly analyzed the opinions of state agency consultant Dr. B. D. Choi and Dr. Alexander Tsinberg. (ECF No. 10, PageID.1046-1048; ECF No. 12, PageID.1082-1084.)

**a.    Standard**

As Plaintiff filed her application after March 17, 2017, the ALJ reviewed the subject medical opinions according to the standards provided in 20 C.F.R. § 404.1520c, which states, "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the persuasiveness of the medical opinions submitted and articulate the findings using the following factors: supportability, consistency, relationship with the claimant, and specialization, with supportability and consistency being the most important. 20 C.F.R. § 404.1520c.

**b.    State agency consultant Dr. Choi**

**i.    Dr. Choi's opinion**

In August 2019, the state agency consultant Dr. Choi rendered a physical RFC assessment finding Plaintiff capable of light work with the ability to sit, stand, and walk for six hours in an eight-hour workday. (ECF No. 8, PageID.105-106.)

19

### ii.   ALJ Herring addressed Dr. Choi's opinion

The ALJ addressed the opinion, stating:

In August 2019, a state agency psychological consultant limited the claimant to light exertion with sitting, standing, and walking for about six hours each during an eight-hour workday, with occasional postural activities (B1A, pp 7-8).  This opinion is partially persuasive regarding the claimant's exertional limitations; however, in light of the claimant's hearing testimony that pressure and pain on her back and foot prevents her from prolonged sitting and standing, she requires additional limitations, such as a sit/stand option every 15 minutes.

(ECF No. 8, PageID.63.)[2]

### iii.   Analysis

For the reasons that follow, the Court should find no error in the ALJ's assessment of Dr. Choi's opinion.

Plaintiff asserts first that the ALJ should not have found the opinion persuasive because "state agency consultants are not treating nor examining physicians, and [Dr. Choi] did not have the benefit of first ever once seeing or examining the Plaintiff, and second a limited review of the record without all exhibits contained therein that document continued, uncontrolled symptoms and additional treatment."  (ECF No. 10, PageID.1046.)  However, under the current regulations, summarized above, an ALJ need not afford specific weight to the

---

[2] It appears the ALJ mistakenly attributed the opinion to the psychological as opposed to medical consultant.

20

opinion of a treating source.  20 C.F.R. § 404.1520c(a).  Supportability and

consistency, *not* treatment or examining relationship, are the most important

factors.  20 C.F.R. § 404.1520c(b)(2); *see also Hardy v. Comm'r of Soc. Sec.*, 554

F.Supp.3d 900, 905-06 (E.D. Mich. 2021).  Moreover, the Sixth Circuit has

recognized that there will "always be a gap between the time the agency experts

review the record and give their opinion . . . and the time the hearing decision is

issued."  *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009)

(quotation marks and citation omitted).  The ALJ may rely on such opinions so

long as the record reflects that he or she has considered the entire record.  *See Ealy*

*v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010).  Additionally, as the

Commissioner points out (ECF No. 1, PageID.1071), the ALJ rendered an RFC

more restrictive, and therefore more favorable to Plaintiff, than that proffered by

Dr. Choi.  *See Mosed v. Comm'r of Soc. Sec.*, No. 2:14-cv-14357, 2016 WL

6211288, at *7 (E.D. Mich. Jan. 22, 2016), report and recommendation adopted by

2016 WL 1084679 (E.D. Mich. Mar. 21, 2016) ("Plaintiff's argument that the ALJ

erred in assessing a *more restrictive* RFC than that opined by the State agency

consultants is curious and unavailing.") (citing *Warren v. Comm'r of Soc. Sec.*, No.

13-cv-13523, 2014 WL 3708565, at *4 (E.D. Mich. July 28, 2014)).

### c.   Dr. Tsinberg

#### i.   Dr. Tsinberg's opinion

In February 2019, Dr. Tsinberg completed a Medical Source Statement

(MSS) opining that Plaintiff would be off-task 25% of a typical workday or more,

likely absent four days per month as a result of impairments or treatment, could

stand or walk for less than two hours in an eight-hour workday, and should have

her leg(s) elevated to heart level for 50% of an eight-hour workday.  (ECF No. 8,

PageID.963-966.)

#### ii.   ALJ Herring addressed Dr. Tsinberg's opinion

ALJ Herring addressed Dr. Tsinberg's opinion, stating:

Alexander Tsinberg, M.D. noted that claimant with vascular
peripheral necrosis, lumbar degenerative disc disease, and lumbar disc
herniation with accompanying pain, numbness, fatigue, and left foot
and joint pain (B9F, p 2).  Dr. Tsinberg opined that during an eight-
hour workday, the claimant would need unscheduled breaks and to be
able to shift positions at will (Id., p 4).  In addition, Dr. Tsinberg
found that with a sedentary job, she should elevate her legs, can never
lift and carry even less than 10 pounds; and can never twist, stoop,
bend, crouch, squat, or climb ladders or stairs (Id., p 5).  Dr. Tsinberg
concluded that the claimant would likely be off task 25 percent or
more of the workday, miss about four days per month, and was
incapable of even "low stress" jobs (Id., pp 3, 5).  Despite issuing
extreme and work preclusive limitations, such as being off task more
than 25 percent of the workday, Dr. Tsinberg treated the claimant
conservatively with medication and epidural steroid injections (B9F,
pp 6, 33, 39, 43, 48, 52, 54).  Because the limitations provided are not
proportional with the medical evidence of the treatment, Dr.
Tsinberg's opinion is not persuasive.  Moreover, the undersigned
would note that the ultimate determination of a claimant's disability is
reserved for the Commissioner.

(ECF No. 8, PageID.63.)  Also later in the RFC analysis, the ALJ stated that Dr.

Tsinberg's disabling opinion was not consistent with Plaintiff's own testimony.

(ECF No. 8, PageID.64.)

In accordance with the applicable regulations, then, the ALJ properly

considered the two most important factors for evaluating medical opinion

evidence—supportability and consistency—to evaluate Dr. Tsinberg's opinion, and

Plaintiff offers no meaningful argument in opposition to the ALJ's conclusion that

she received only conservative treatment from Dr. Tsinberg, or that her testimony

was inconsistent with the opinion.  *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x

719, 725 (6th Cir. 2013) (conservative treatment a valid consideration when

assessing RFC).

Plaintiff does, however, assert that Dr. Tsinberg's MSS is in fact consistent

with his own records as well as others because "[o]n most of the visits with Dr.

Tsinberg, [she] is observed to have an antalgic gait which would contribute to [her]

limitations in standing and walking," and "lower extremity swelling, heaviness,

and weakness are noted not only by Dr. Tsinberg, but in records from other

facilities as well which would account for the leg elevation at heart level for 50

percent of the day."  (ECF No. 10, PageID.1047.)  Further, she states:

> [A]s mentioned previously, the record as a whole notes chronic low
> back, abdominal, pelvic, groin, and foot pain, and fatigue which
> account for further limitations set in his assessment.  Finally,

> numerous physical exams find Plaintiff to be in mild distress and
> anxious as well as observed to have an antalgic gait, abdominal
> tenderness, limited flexion and extension of the lumbar spine due to
> pain, tenderness of the lumbar spine, tenderness of the left foot, joint
> tenderness at the tarsometatarsal joint of the left foot, tenderness in the
> tendon, diffuse swelling and tenderness of the right foot, and diffuse
> swelling of the left foot, and even a positive leg raise.

(ECF No. 10, PageID.1047-1048) (internal record citations omitted).

However, as provided in greater detail above, the ALJ explicitly considered these symptoms and diagnoses, including Plaintiff's pain and tenderness throughout the body, and antalgic gait (ECF No. 8, PageID.60-64), as well as many of the records cited by Plaintiff, and came to a different conclusion than Plaintiff and Dr. Tsinberg with the support of substantial evidence including medical records, the opinion of Dr. Choi, and Plaintiff's activities of daily living.  SSR 96-8p, 1996 WL 374184, at *7.[3]  These are all appropriate considerations and, again, the Court cannot now re-weigh this evidence.  *Reynolds*, 424 F. App'x at 414.

---

[3] Indeed, "[t]he Social Security Administration and the 6th Circuit have made clear that the ability to perform minimal daily activities does not equate to the ability to perform work activities on a regular basis, 40 hours a week." *Coloske v. Comm'r of Soc. Sec.*, No. 12-15198, 2014 WL 1048156, at *7 (E.D. Mich. Mar. 18, 2014) (Berg, J., *adopting report and recommendation of* Hluchaniuk, M.J.).  *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (evidence of minimal daily activities on a sustained basis).  However, "[a]n ALJ may ... consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d at 532.  *See also* SSR 16-3p, 2017 WL 5180304 at *7-8; 20 C.F.R. § 404.1529(c)(3) (factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include daily activities).

Plaintiff also asserts that the ALJ's statement regarding the Commissioner's reservation of the disability determination demonstrates the ALJ's misinterpretation of Dr. Tsinberg's opinion (ECF No. 10, PageID.1047), but this is an accurate statement of the law, *see* 20 C.F.R. § 404.1520b(c)(3), and Dr. Tsinberg's MSS does appear in check-box format with little explanation for his suggestion of total disability.  *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) (a check-box opinion, unaccompanied by explanation, is "'weak evidence at best'") (citation omitted); *see also Jackson v. Comm'r of Soc. Sec.*, No. 1:16-cv-14404, 2017 WL 4699721, at *7 (E.D. Mich. Oct. 19, 2017) (finding a medical source statement that was in "check-box format" to be "an impotent addition to the record with little to no persuasive value").  Thus, I see no error in the ALJ's statement.

## F.    Conclusion

Plaintiff has the burden of proof on statements of error.  Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 10), **GRANT** Defendant's motion for summary judgment (ECF No. 11), and **AFFIRM** the Commissioner of Social Security's decision.

25

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  August 10, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE